UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ADVANTAGE OPEN MRI, INC.,**

    Plaintiff,

v.                                                     Case No.: 8:08-CV-2308-T-17EAJ

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,**

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the court are Plaintiff's **Motion to Remand** (Dkt. 8), Defendants' **Corrected Memorandum in Opposition** (Dkt. 15), Plaintiff's **Supplemental Brief** (Dkt. 26), and Defendants' **Supplemental Brief** (Dkt. 27). On June 29, 2009, the court held an evidentiary hearing on Plaintiff's motion (Dkt. 29).

## Background

On September 11, 2008, Plaintiff[1], a provider of magnetic resonance imaging ("MRI") services, filed a class action suit in state court alleging that Defendants underpaid medical invoices that Plaintiff submitted after treating Defendants' insureds (Dkt. 2). Plaintiff sought declaratory relief, injunctive relief, and no fault benefits (Id.).

On November 19, 2008, Defendants removed the case to this court (Dkt. 1). On December 15, 2008, Plaintiff moved this court to remand the case back to the state court, contending that the amount-in-controversy requirement for federal jurisdiction was not satisfied (Dkt. 8).

---

[1] By "Plaintiff" the court refers to Advantage Open MRI, Inc. individually, as assignee, and on behalf of all those similarly situated.

The District Judge referred Plaintiff's motion to the undersigned for a report and recommendation (Dkt. 16). Judge Kovachevich specified that "the only issue remaining to be determined is whether the amount in controversy requirement is satisfied" and directed that the putative class members' claims be aggregated to establish this amount. (Id. at 3) Moreover, Judge Kovachevich requested a determination of whether the amount in controversy should include "not only the actual damages but the value of the declaratory judgment and the injunctive relief" (Id. at 5-6).

## Analysis

The parties dispute whether Plaintiff's original complaint satisfied the amount-in-controversy requirement set by the Class Action Fairness Act ("CAFA"). See 28 U.S.C. § 1332(d)(2). Moreover, the parties disagree over what evidence should be considered in resolving this dispute.

CAFA provides that federal courts "have original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and there is minimal diversity." Miedema v. Maytag Corp., 450 F.3d 1322, 1327 (11th Cir. 2006) (citation and internal quotation marks omitted). Where damages are unspecified, it is the defendant's burden to establish the jurisdictional amount by a preponderance of the evidence. Lowery v. Ala. Power Co., 483 F.3d 1184, 1208-10 (11th Cir. 2007).

Generally, "in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff - be it the initial complaint or a later received paper - and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." Id. at 1213. If this "limited universe of evidence" does not establish federal jurisdiction or the propriety of removal, "neither the defendants nor the court may speculate in an attempt to make up for the notice's failings." Id. at 1214-15. Jurisdiction should be premised on

factual allegations and not "divined by looking to the stars." Id. at 1215.

Nonetheless, the court may look beyond the notice of removal and any accompanying documents where "the underlying substantive law provides a rule that allows the court to determine the amount of damages." Id. at 1214 n.66. For example, in a contract dispute, a plaintiff's failure to provide the defendant with a copy of the contract does not preclude the defendant from producing a copy of the contract to aid the court in determining expectation damages. Id.

According to Defendants' notice of removal, "Plaintiff's claims are based upon insurance benefits that are governed by contracts, the automobile insurance policies of State Farm's insureds" (Dkt. 1 at 5). Accompanying the notice are the declaration of Daniel P. Merrigan ("Merrigan") (Dkt. 1 Ex. 1), a State Farm Claims Section Manager, and a spreadsheet he compiled identifying all claims submitted by MRI providers to State Farm between January 1, 2008, and October 31, 2008, where Defendants disallowed a payment pursuant to Medicare's Outpatient Prospective Payment System ("OPPS") and Multiple Imaging Procedure Reduction ("MIPR") (Dkt. 1 Ex. 1 Ex. A).[2] Based on Merrigan's calculations, these amounts totaled $10,942,276.75 for this period (Dkt. 1 Ex. 1).

Plaintiff submits that Merrigan's declaration "misconstrue[s] and erroneously inflate[s] Plaintiff's damages claim" (Dkt. 8 at 4). Plaintiff contends that it is seeking only the difference between what Defendants actually paid to Plaintiff and what Defendants were allegedly required to pay under Florida law (Id. at 5). Specifically, Plaintiff challenges Defendants' reliance on OPPS and MIPR to reduce payments below the minimum compensation required by Fla. Stat. § 627.736 (Id.). Plaintiff avers that the actual amounts at issue in this matter are exceeded by "the significantly

---

[2] At the hearing, Merrigan clarified that this spreadsheet reflects the differences between "the amount that was billed to us" and "the amount that we paid out."

3

greater amounts identified by Defendants in [Merrigan's declaration], which identified the total amounts disallowed" (Id.).

Plaintiff's arguments are consistent with the complaint, which emphasizes that Fla. Stat § 627.736 sets the "baseline" for reimbursement for MRI services and incorporates into each count an allegation that Defendants routinely underpay MRI claims via OPPS and MIPR (Dkt. 2 at 9, 11). Although Defendants correctly point out that Plaintiff's claim for damages alleges that Defendants "failed and/or refused to fully pay the appropriate amount of . . . benefits" and "fail[ed] to make timely and full payment of . . . benefits" (Id. at 20), these phrases do not contradict Plaintiff's assertion that it seeks only the relief specified in its general allegations. Thus, even assuming the court may consider Merrigan's declaration and spreadsheet, the court declines to do so because those documents reflect the total amounts disallowed by Defendants rather than the amounts at issue in this case, i.e., the differences between the amounts reimbursed by Defendants and the minimum reimbursements required under Florida law.

Similarly, the court declines to consider Merrigan's supplemental declaration, in which he avers that, accepting Plaintiff's characterization of its claims[3], the amount in controversy for the period from January 1, 2008, to January 30, 2009, totaled $5,260,812.26 (Dkt. 15 Ex. A). Because this case was removed on November 19, 2008, Merrigan's supplemental declaration does not accurately indicate the amount in controversy at the time of removal; rather, it includes transactions that occurred for more than two months after this case was removed. See Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1268 n.12 (11th Cir. 2009) ("jurisdictional facts are assessed at the time of

---

[3] At the hearing, Merrigan testified that his supplemental declaration accounts for the difference between "what the Plaintiff actually believes they're entitled to and what State Farm paid."

removal"). Moreover, while Merrigan asserts that his calculations are based on the transactions identified in his initial declaration and spreadsheet, the spreadsheet does not provide dates for the listed transactions. Thus, it is impossible to identify which of the transactions in the spreadsheet predate the time of removal.

The only remaining evidence indicating the amount in controversy is the affidavit of Amy Holiday ("Holiday"), Plaintiff's billing manager, which calculates this sum as $3,684,700.00 (Dkt. 8 Ex. A).[4] Because Holiday's affidavit covers only the period from January 1, 2008, through October 31, 2008, it better reflects the amount in controversy at the time of removal. The fact that the affidavit constitutes post-removal evidence does not preclude its consideration in assessing that amount. See Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001) ("[A] district court may properly consider post-removal evidence in determining whether the jurisdictional amount was satisfied at the time of removal.").

Based on Holiday's affidavit, which is not contradicted by any other meaningful evidence, Plaintiff's actual damages at the time of removal were $3,684,700.00. Although this figure falls short of CAFA's jurisdictional threshold, it may be aggregated with the value of Plaintiff's requested declaratory and injunctive relief so long as this value is not "too speculative and immeasurable." Leonard v. Enterprise Rent A Car, 279 F.3d 967, 973 (11th Cir. 2002) (citation and internal quotation marks omitted).[5] When aggregating the value of declaratory or injunctive relief for

---

[4] Holiday elaborates that her "approximations . . . were calculated using estimates for rates greater than charged by Plaintiff" and that she relied on Plaintiff's assertion that the difference between the amounts Defendants actually paid and the amounts they were required to pay under Florida law averaged between $183 and $223. (Dkt. 8 Ex. A).

[5] In addition to requiring aggregated equitable relief to be measurable, the Eleventh Circuit has traditionally allowed aggregation only "when several plaintiffs unite to enforce a single title or

5

amount-in-controversy purposes, the value must be "measured from the plaintiff's perspective." Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1268 (11th Cir. 2000) (citation and internal quotation marks omitted).

In Leonard, the plaintiffs brought a class action alleging that several car rental companies engaged in misrepresentation and were unjustly enriched when they sold automobile insurance or supplemental insurance without a license to do so. 279 F.3d at 970. The defendants argued that the amount-in-controversy requirement for federal jurisdiction was satisfied as to each defendant because the threshold would have been exceeded by any award of equitable relief. Id. at 973. The Eleventh Circuit disagreed, pointing out that, whether or not the plaintiffs ultimately obtained an injunction, they would be free to refuse to purchase insurance from the defendants in the future. Id. The court reasoned that any injunctive relief would "not be of any monetary value to the class members, and [could] not be considered for amount in controversy purposes." Id.

The court applied similar reasoning in Friedman v. New York Life Insurance Co., 410 F.3d 1350, 1358 (11th Cir. 2005), where the plaintiff claimed that "her premiums were raised in violation of certain statutory provisions of Florida law that were . . . incorporated into her contract with [the defendant]." Id. at 1351. She sought "reimbursement of the allegedly overpaid premiums, declaratory relief, and an injunction against continuing violation of Florida law." Id. at 1352. The

---

right, in which they have a common and undivided interest." Leonard, 279 F.3d at 974; see also Friedman v. N.Y. Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005); Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1258 (11th Cir. 2000). While this requirement remains for class actions brought under 28 U.S.C. § 1332(a), it does not apply where jurisdiction is asserted under CAFA. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 571 (2005) (noting that CAFA "abrogates the rule against aggregating claims"); see, e.g., Eyler v. ILD Telecomms., Inc., No. 3:08-cv-351-J-32JRK, 2008 WL 5110754, at *11 (M.D. Fla. Nov. 25, 2008) (unpublished); C & E, Inc. v. Friedman's Jewelers, Inc., No. CV 107-122, 2008 WL 64632, at *2 (S.D. Ga. Jan. 4, 2008).

6

Eleventh Circuit observed that aggregating the value of the injunctive relief would have required "utter speculation as to what course or courses of action [the defendant] might take with respect to future rate structuring . . . [it] might find ways to cut costs, or even decide to simply cancel the policy. Id. at 1358.

Here, like the plaintiff in Friedman, Plaintiff seeks declaratory relief, injunctive relief, and reimbursement of costs. Moreover, Friedman is instructive insofar as predicting Defendants' response to the outcome of this matter would require "utter speculation." Id. While Defendants might agree to reimburse MRI providers to Plaintiff's benefit, Defendants could alternatively decline to cover MRI procedures provided by Plaintiff or simply cease covering MRI procedures altogether. See Lutz v. Protective Life Ins. Co., 328 F. Supp. 2d 1350, 1361 (S.D. Fla. 2004) (finding value of injunctive relief speculative where defendant insurance company could end its relationship with the plaintiff, its insured, by "cancelling [the plaintiff's] policy, discontinuing the policy form for all plaintiffs, or going out of business"). Moreover, although insurance policy agreements might reflect Defendants' continuing obligation to compensate their insureds for MRI treatments, there is no evidence that Plaintiff is under a continuing obligation to treat Defendants' insureds. See Leonard, 279 F.3d at 973 (reasoning that the value of injunctive relief was speculative because the plaintiffs were "free to refuse to purchase the insurance offered by the defendants"); Eufaula Drugs, Inc. v. Scripsolutions, No. 2:05CV370-A, 2005 WL 2465746, at *8 (M.D. Ala. Oct. 6, 2005) (finding past reimbursement for prescriptions was not sufficient indicator of future reimbursement where there was no contract requiring future dealings). Nor is there evidence that Plaintiff is under a continuing duty to accept assignments of benefits rather than to require Defendants' insureds to pay for their treatment directly.

In sum, even if Defendants modified their reimbursement policy as a result of this suit, "the benefit that would flow to [Plaintiff]" is too speculative to justify aggregating it for amount-in-controversy purposes. Morrison, 228 F.3d at 1268 (citation and internal quotation marks omitted). Consequently, Defendants have not established by a preponderance of the evidence that CAFA's $5,000,000 amount-in-controversy requirement was satisfied when this case was removed to federal court. Accordingly, Plaintiff's motion to remand should be granted as this court lacked subject matter jurisdiction over Plaintiff's complaint at the time of removal. See, e.g., Lowery, 483 F.3d at 1221.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)     Plaintiff's Motion to Remand (Dkt. 8) be **GRANTED**.

_____
ELIZABETH A JENKINS
United States Magistrate Judge

**Date: July 24, 2009**

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge